**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION**

| | | |
|---|---|---|
| **STACEY W. BURT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CAUSE NO. 1:06-cv-1077-WTL-TAB** |
| | ) | |
| **LIFE INSURANCE COMPANY OF** | ) | |
| **NORTH AMERICA, INC. d/b/a CIGNA** | ) | |
| **GROUP INSURANCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Stacey Burt suffers from permanent neurological damage, the result of a brain aneurysm which occurred on December 16, 1996.  He has been unable to return to work as Chief Operating Officer of a physicians specialty practice group in Muncie, Indiana and has been drawing disability benefits from Defendant, Life Insurance Company of North America ("LINA").  LINA provided the long term  disability insurance contract which was a part of the benefit package provided to Burt by his employer.  LINA's insurance contract provides for certain monthly disability benefits to a qualified disabled plan participant, which benefits are reduced by the amount of any Social Security disability benefits the participant or his dependents receive.  The LINA policy also provides that a disabled employee is eligible for a Cost of Living Adjustment ("COLA") to be calculated annually on the basis of any increase in the Consumer Price Index.

The plan/policy[1] requires an employee covered by Social Security to apply for such benefits if that employee wishes to avoid an automatic deduction from the monthly disability benefit equal to the amount LINA estimates the employee and his dependents would be entitled to receive in Social Security disability payments. Burt was denied Social Security disability benefits the first time he applied in 1998. At the urging of LINA, Burt reapplied for Social Security on December 29, 2000; again, his application was denied. In July 2002, LINA wrote to Burt again, asking that he reapply for Social Security, indicating it could be advantageous for him to do so and offering assistance from a third-party benefit recovery firm, Allsup, Inc., in seeking those benefits. Burt spoke with Phyllis Bettino, the LINA employee identified on his benefit checks as his claim representative, to inquire about LINA's request that he continue to seek Social Security benefits despite two previous rejections. Bettino informed Burt that seeking Social Security benefits would not reduce the overall monthly benefit he was receiving, it would simply come from two different sources. Burt then complied with LINA's request, executing an authorization which allowed LINA's business partner, Allsup Inc., to act as his authorized legal representative in seeking Social Security disability benefits. This third pursuit of benefits was denied in March 2003, but Allsup appealed on behalf of Burt.

Through a letter dated February 23, 2005, LINA informed Burt that his monthly benefit for 2005, including the COLA adjustment, would be $5,570.13. In March 2005, Allsup informed Burt that it had been successful in its appeal of the latest Social Security benefits denial, and the same were found payable retroactive to December 1998. As a result, Burt was to receive three lump sum retroactive payments (one for his benefits and one each for benefits due

---

[1]In this instance, the policy language is the plan, so reference to either the plan or the policy is a reference to the same language.

-2-

his two dependents) from Social Security totaling $183,133.00.

Following the award of Social Security disability benefits, but before all three lump sum retroactive payments were received by Burt, Allsup and/or LINA endeavored to calculate the amount LINA had overpaid Burt, in light of policy provisions which allowed LINA to recover overpayments of "Monthly Benefits."  Allsup first wrote Burt on April 29, 2005, stating that the overpayment amount was $171,444.21.  Soon after receiving that letter from Allsup, Burt received the first of the three anticipated retroactive benefit checks from Social Security and remitted the amount of that check, $120,945.00 to Allsup for payment to LINA.  A letter to Burt from Allsup, dated August 15, 2005, acknowledged his previous payment and provided him with a recalculation of the total amount LINA claimed to have overpaid; this time the figure was $169,169.15.  However, Allsup sent Burt another letter on September 26, 2005, with a further revised total overpayment figure of $185,455.19, an amount which was more than the total of the three checks he was to receive from Social Security.  In addition, even before Burt received LINA's third calculation of the claimed overpayment, he received a letter directly from his claim manager at LINA indicating that the insurer had miscalculated his monthly benefit as well, and that his gross monthly benefit for 2005 was only $5,146.90, of which LINA would be paying $3,659.90, with Social Security remitting the remainder.[2]

Despite a policy provision which described LINA's entitlement to recover overpayments as the ability to recoup any amount of a "Monthly Benefit" which was overpaid, it was LINA's position that it was entitled to recover the amount of the monthly benefit that the retroactive

---

[2]For ease and clarity, because this is a claim for benefits which Burt alleged are due him under his employer's plan, the Court will refer to the total amount of monthly benefit payments Burt receives from both LINA and Social Security as his "gross benefit" and the amount of the monthly benefit paid only by LINA as the "net benefit."

Social Security payments would offset and also any COLA amount it paid which exceeded a calculation based solely on what its share of the gross payment should have been.  LINA's recalculation of Burt's gross monthly benefit going forward was also based on a reduction of the COLA to a percentage of only that amount of the gross monthly disability benefit for which it was responsible.  Needless to say, Burt was not pleased with either the reduction of his monthly benefit or the notion that he was required to pay LINA more than the amount of the retroactive benefits he received from Social Security.  His attempt to cooperate with LINA by continuing to pursue Social Security benefits had, if LINA's position was correct, left him with a smaller monthly benefit check and a debt to the insurer greater than the benefit  he recovered from the agency.

After Burt received the two additional retroactive benefit checks from Social Security he filed suit in state court against LINA, proffering the amount of the two checks, $62,188.00, along with his claim of interpleader, and alleging both breach of contract and estoppel.  LINA removed the matter to this court, on the basis that Burt's claim properly falls under the federal Employment Retirement Income Security Act ("ERISA") and counterclaimed for the full amount of its third calculation of its overpayment.  Subsequently, the parties settled the counterclaim and Plaintiff's interpleader, including all amounts due Burt under the policy for periods prior to April 26, 2005.  That leaves for resolution the issue of whether the annual COLA benefit should be calculated based upon the gross monthly disability payment due Burt from both the insurer and Social Security, or whether the COLA calculation should be based on only what Burt is entitled to under the plan, or the net benefit.  Also, there remains the claim that Burt relied upon the representations of LINA and its agent, Allsup, that his receipt of Social Security benefits would not reduce his monthly benefit.  As a consequence, Burt contends that LINA is

-4-

estopped from reducing its monthly benefit contribution by any amount that would cause his gross monthly benefit to be lower than the amount he received prior to the approval of his third application for Social Security benefits.  Both parties have moved for summary judgment.

There are several provisions of LINA's insurance contract with Burt's employer that are relevant to the parties' dispute.  First, the contract defines the "Monthly Benefit" as follows:

> The Monthly Benefit for an Employee for any month is:
>
> 1. The lesser of:
>
>> a. 60.00% of the Employee's Basic Monthly Earnings rounded to the nearest dollar;
>> or
>> b. $10,000; and
>
> 2. minus Other Benefits for that month.

The term "Other Benefits" is defined in the insurance policy as well.  That definition provides in pertinent part that:

> Other Benefits include:
>
> ***
>
> (2) any disability or Old Age benefits payable under the Federal Social Security Act, which the Employee receives (or is assumed to receive) on his own behalf;
>
> (3) any disability or Old Age benefits payable under the Federal Social Security Act, which the Employee receives (or is assumed to receive) on behalf of his dependents; or which his dependents receive on account of the Employee's receipt (or assumed receipt) of such benefits.[3]

Until his application for Social Security was approved, Burt's monthly disability benefit

---

[3]The insurance contract has a provision which states that it will be assumed that a disabled employee covered by Social Security is receiving Social Security benefits unless that employee provides proof that his application is in process or that it was denied.

came only from LINA.  It was calculated based upon 60% of his monthly salary, which

increased each year under a policy provision which, as set forth below, provided for annual

indexed increases to a disabled employee's basic earnings for purposes of calculating benefits.

Burt had no "Other Benefits" until his third Social Security application was approved on appeal.

The LINA insurance policy has a provision entitled "Cost of Living Adjustment," which

sets forth the basis for an annual COLA to be calculated and added to an employee's Monthly

Benefit.  That provision states:

COST OF LIVING ADJUSTMENT

On January 1, any Employee who is entitled to receive a Monthly Benefit
and has been Disabled for 12 months following the end of the Benefit
Waiting Period will be eligible for a Cost of Living Adjustment.  The
Monthly Benefit payable to him, beginning with the month of January, will
be increased by the lesser of:

(1) the percentage increase in the U.S. Department of Labor
Consumer Price Index for Urban Wage Earners and Clerical
Workers (CPI-W) during the 12 calendar months ending on
the preceding October 31st; or

(2) 6%.

The Cost of Living Adjustment will be determined on each January 1 as
long as the Employee is entitled to receive a Monthly Benefit.  The
adjustment will not be subject to the overall maximum Monthly Benefit.

Finally, the LINA insurance contract provides for the recovery of overpayments.  It states that:

If the Monthly Benefit for any month is overpaid, the Insurance Company
has the right to recover the amount overpaid by either of the following
methods:

(1) a deduction of the overpaid amount from any future payments by the
Insurance Company; or

(2) a lump sum repayment by the Employee of the overpaid amount.

Burt does not dispute that the LINA insurance contract is part of a qualified employee

-6-

welfare benefit plan and that, therefore, ERISA applies and jurisdiction and venue before this

Court is proper.  His claim against LINA falls under the provisions of 29 U.S.C. § 1132(a)(1)(B),

which allows a plan participant such as Burt to pursue benefits he believes are due him under the

plan. The fact that Burt has set forth his claim in two counts, differentiating between his breach

of contract and estoppel claims, is of no real significance as the federal common law of contracts

which has developed around the ERISA enforcement actions incorporates estoppel principles,

though they are more narrowly applied.  *Gallegos v. Mt. Sinai Medical Center,* 210 F.3d 803,

809 (7th Cir. 2000).  In the end, even pursuant to 29 U.S.C. § 1132(a)(1)(B), if LINA's

calculation of Burt's monthly benefit from April 26, 2005, going forward is not consistent with

the plan, then Burt prevails on his "breach of contract" claim; or, if Burt can show that the

evidence supports all the elements of estoppel as applied to a participant's claim for benefits

under ERISA, he may prevail as well.

  LINA contends that the unambiguous plan or policy language provides that the "Monthly

Benefit" it is required to pay an eligible employee does not include any "Other Benefits,"

including any disability benefit which that employee receives from Social Security, regardless of

when the Social Security Benefits are received.  According to LINA, because the insurance

contract states that the COLA is calculated as a percentage of the "Monthly Benefit,"  it is not

required to include any Social Security benefits in its calculation of the COLA or, stated another

way, the COLA is calculated on the basis of the net monthly benefit which Burt is entitled to

receive from LINA, not on Burt's gross monthly benefits.  The Court agrees that the insurance

contract clearly does not require that LINA include the Social Security benefits received by Burt

in the calculation of his annual COLA.  Unambiguous plan language will be given its plain

meaning. *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 354 (7th Cir. 2006).  However,

that does not end the inquiry.

Burt has submitted exhibits which include several letters he received from both LINA and Allsup, extolling the advantages of continuing to pursue Social Security disability benefits, which mailings included "fact sheets" which outlined all the favorable things that would occur should he successfully qualify for those Social Security payments.  These letters were clearly an attempt by LINA to persuade Burt that he would be better off financially if he qualified for Social Security.  They also served the purpose of promoting a result which would assist its own bottom line, through the government assuming much of the financial obligation the insurer would otherwise pay under its insurance contract.  Further, the letter from LINA dated July 3, 2002, without question suggests that Burt is obligated to continue to pursue Social Security benefits, though it is not at all clear from the contract that such an obligation existed under the circumstances of his previous denials.  Burt called a representative of LINA after receiving that letter to better understand what was required of him, and that representative specifically told him that if he were to qualify for Social Security payments, the overall amount he received each month would not be lowered.

The elements of estoppel applicable to an ERISA denial of benefits claim are: (1) a knowing misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plan participant on the misrepresentation; (4) to the participant's detriment or disadvantage. *International Union of United Automobile, Aerospace and Agricultural Implement Workers of America  v. Rockford Powertrain, Inc.*, 350 F.3d 698, 705 (7th Cir. 2003).  LINA accuses Burt of relying on a strained interpretation of its written representations and contends that nothing in its letters or the other written materials it sent promises that Burt's monthly income would increase if he qualified for the Social Security disability payments.

-8-

Burt's interpretation of the numerous written statements and encouragement from LINA may be strained in some respects, but he had every right to interpret at least one written statement as an assurance that his monthly income would not decrease, as it did. In its July 3, 2002, letter to Burt, LINA included a section covering the averred benefits to the employee if he qualifies for Social Security, which section includes the following statement in a persuasively titled subsection:

### Increased Disability Benefits

Your LTD policy may contain a provision called a Cost-of -Living (COLA) "Freeze."  This means that any COLA increases Social Security authorizes will not be deducted from your Long Term Disability (LTD) benefit.  Therefore, your overall income (LTD plus other benefits) will increase each year due to the Social Security COLA.

After receiving the July 3, 2002, letter, Burt, according to his unchallenged affidavit, states that he telephoned  Phyllis Bettino of LINA to gain a clarification of the circumstances.  Ms. Bettino told Burt that he should reapply for Social Security benefits and that his receipt of the same would not change the total amount he received, but rather it would simply cause the amount paid to be split between LINA and the government.  So, while the written statement from LINA suggested his benefits would likely increase, the verbal confirmation was that, at a minimum, they would not decrease.

It is true that an oral representation without a written confirmation can not alter the terms of a benefit plan under ERISA.  *See Orth v. Wisconsin State Employees Union, Council 24,* 546 F.3d 868, 873 (7th Cir. 2008).  However, here the Court is faced with a situation where Burt received a written representation regarding increased disability benefits that, at best (for LINA), is ambiguous and, without more, would cause most reasonable people whose policy contains a COLA "Freeze" provision to believe that a successful Social Security application would increase

-9-

their gross monthly benefit.  Seeking to clarify the writing he received, Burt spoke with the insurer and was verbally informed that he would lose nothing if he was found to qualify for Social Security.[4]  As it turns out,  he ended up receiving a gross benefit which was less than what he received prior to approval of his Social Security disability application.

Based on the written representation from LINA and its subsequent verbal explanation, after Burt's Social Security appeal was successful he was entitled to receive a monthly gross benefit that was no less than what LINA was obligated to pay him prior to the government paying him benefits every month.  What that means in real financial terms is that from April 26, 2005, forward, Burt was entitled to receive a gross monthly benefit from Social Security and LINA that was no less than the $5,570.13 gross benefit that LINA calculated in its February 23, 2005 letter to Burt.  Stated another way, until the sum of the Social Security monthly payments and LINA's monthly obligation to Burt, using the formula which calculates LINA's COLA obligation based solely on the amount of its net obligation (not that amount plus the Social Security contribution), equals $5, 570.13, LINA owes Burt the difference.

Though the Court has not performed the necessary matheatical calculations, the Court suspects that when Burt's "Indexed Basic Earnings" (a defined term and calculation within the LINA insurance contract) and the annual COLA were calculated for 2006, his gross benefit payments rose above the $5,570.13 that LINA had calculated for the 2005 monthly payments prior to Burt receiving the Social Security payments.  If that is the case then Burt's damages are

---

[4]An additional circumstance that reinforces a reasonable belief on the part of Burt that LINA was guaranteeing that he would lose nothing financially is that LINA would benefit so significantly from not having to pay whatever amount Social Security might pay in benefits. Because of that, it would make sense for LINA to supplement its smaller monthly obligation for a period of time if it resulted in such a significant net savings.

the difference between what he actually received in gross benefits for 2005 and what he would have received had he continued to receive the $5,570.13 monthly gross that LINA had previously calculated. If Burt's 2006 monthly gross benefit did not exceed $5,570.13, then LINA would continue to owe Burt the difference until his monthly gross benefit exceeded that figure. Because it does not appear that the parties have a difference of opinion with regard to the formula to be used to make the annual benefit calculations under the policy (other than the suggestion of Burt that the COLA applies to his gross benefit, which we have already rejected) the Court assumes that the parties can agree on the amount of damages to which Burt is entitled on the basis of this Court's ruling, as expressed in this entry. To that end, while Plaintiff's motion for summary judgment is granted in part, the Court will refrain from entering a separate final judgment until the parties either jointly provide an agreed calculation on damages or present their differences to the Court for resolution. LINA's agreement to a damages calculation consistent with the Court's analysis in this entry should not be interpreted as a waiver of its appeal rights with regard to the underlying substantive determination this Court has made regarding Burt's Complaint or his entitlement to damages.

For the reasons expressed in this Entry, Defendant's Motion for Summary Judgment (Doc. #37) is **DENIED**. Plaintiff's Motion for Summary Judgment (Doc. #34) is **GRANTED IN PART and DENIED IN PART**. Final judgment will not be entered until the calculation of damages has been completed; the parties shall make their submissions on that issue no later than **thirty days from the date of this Entry**.

SO ORDERED:  03/17/2009

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification